IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRUCKSTOP.NET, L.L.C., ) | |
| ) | Case No. CV-04-561-S-BLW |
| ) | (Lead Case) |
| Plaintiff, ) | |
| ) | **MEMORANDUM DECISION** |
| v. ) | **AND ORDER** |
| ) | |
| SPRINT COMMUNICATIONS ) | |
| COMPANY, L.P., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |
| TRUCKSTOP.NET, L.L.C., ) | |
| ) | Case No. CV-05-0138-S-BLW |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| SPRINT CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## INTRODUCTION

The Court has before it an appeal from the decision of the Chief Magistrate Judge and a motion to stay and for protective order. These matters are fully briefed and at issue.

**Memorandum Decision and Order – Page 1**

## STANDARD OF REVIEW

With regard to the objections posed to the decision of the Chief Magistrate Judge, this Court must determine if the decision of the Chief Magistrate Judge is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(2)(A).

## BACKGROUND

Plaintiff Truckstop.net (TSN) entered into a Customer Service Agreement (CSA) with defendant Sprint Communications. Sprint agreed to design, install, and test wireless networks at truck stops to enable TSN subscribers to access the internet.

TSN alleges that the CSA required Sprint to deliver a network using not only older wireless technology – known as "b" technology – but also the more recent "g" technology. In more technical terms, TSN alleges that Sprint was obligated to provide 802.11 b/g wireless local area networks.

After Sprint installed its networks, TSN alleges that it received many complaints about poor and inconsistent internet access, and that many subscribers dropped their service. TSN brought this suit against Sprint to recover its losses.

About five months after filing suit against Sprint Communications, TSN filed a separate suit against its parent company, Sprint Corporation, claiming that it interfered with the CSA between TSN and Sprint Communications. Those suits

**Memorandum Decision and Order – Page 2**

have since been consolidated.

The Chief Magistrate Judge issued a decision resolving various disputes between the parties, and Sprint has filed an objection to that decision. Sprint also seeks to stay a deposition pending a decision on its objections. The Court will consider each of Sprint's allegations.

## ANALYSIS

**1.      Privileged E-Mail**

On Monday, September 27, 2004, Sprint Communication employees Deborah Neal and Ruth West participated in a telephone call with Sprint's legal department. The next day, Neal wrote an e-mail to West and fellow corporate employees Nancy Salisbury and Shawn Minor. None are attorneys for Sprint. The e-mail was inadvertently disclosed to TSN during discovery and Sprint seeks to block TSN from using it in this litigation.

The purpose of the e-mail, according to Neal, "was to provide them [her three co-workers] with my understanding of the legal advice that had been provided to me by Sprint's in-house attorneys." *See Neal Declaration* at ¶ 2, p. 2. Her e-mail begins by announcing "[h]ere is the status of our call with Sprint legal yesterday." Her summary of the legal advice is clearly marked by prefaces such as (1) "legal has advised us . . .," (2) "the initial legal advice is . . . ," and (3) "[l]egal

**Memorandum Decision and Order – Page 3**

agrees that . . . ." The Chief Magistrate Judge ruled that these statements convey privileged non-waived communications that must be redacted from the e-mail. That ruling has not been appealed and thus will not be reviewed by this Court.

The Chief Magistrate Judge also held that once this legal advice was redacted from the e-mail, the remaining sentences were mere factual recitations that were not privileged. Sprint appeals this decision, claiming that the factual recitations are part and parcel of Neal's description of the legal advice she received.

With regard to these factual recitations, Neal explains that she "summarized the information I had given to those same lawyers, on which they rendered legal advice." *Id*. She had received the information from Sprint's engineering group. *See Neal Deposition* at pp. 239-40. For example, in one sentence Neal states that "if the customer insists on a B/G network, the Access Points (A/P) and Amplifiers that are currently installed do not work properly together and only allow about 40% connectivity. We are unable to meet the customer's expectations with the current equipment." *See Exhibit D to Affidavit of Dunham*. In another sentence, talking about a remedy for the poor performance, she states that "I'm assuming they [customers] would expect Sprint to absorb all of the costs [of the remedy]." *Id*.

**Memorandum Decision and Order – Page 4**

Neal states in her Declaration that "[a]ll of the information contained in the e-mail was discussed with Sprint's legal department incidental to their rendering legal advice to me and my colleagues, as representatives of [Sprint]." *See Neal Declaration* at ¶ 2, p. 2.  She explains that the purpose of the e-mail was to provide Salisbury, Minor, and West "with my understanding of the legal advice that had been provided to me by Sprint's in-house attorneys." *Id.* at ¶ 3.

Any communication that reveals what Neal told to Sprint's counsel for the purpose of obtaining legal advice is privileged. *See Upjohn Co. v. U.S.*, 449 U.S. 383 (1981); Idaho Rule of Evidence 502(b) (stating that a communication is privileged if it is "made for the purpose of facilitating the rendition of professional legal services").[1]  However, the privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn* 449 U.S. at 395.  The client "cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to

---

[1] The nature and extent of the attorney-client privilege is defined by state law. *Evans v. Raines*, 800 F.2d 884, 887 n. 4 (9th Cir.1986).  Sprint Communications is a limited partnership, not a corporation.  *See Complaint* at ¶ 2.  Nevertheless, the principles applied to corporations in *Upjohn* are equally applicable to limited partnerships.  *See Restatement (Third) The Law Governing Lawyers*, § 73, comment c at p. 558 (2000).  While Idaho has not expressly adopted these principles, the Court finds that it would if faced with these issues.

**Memorandum Decision and Order – Page 5**

his attorney." *Id.*

Thus, Neal's e-mail is privileged to the extent it answers the question, "What did you say or write to the attorney?" A close reading of the e-mail reveals that it does not answer this question.

In the redacted portion of the e-mail, Neal summarizes the legal advice she received, the gist of which is that Sprint is obligated to provide the more recent "g" technology. She then explains to her colleagues why this is not welcome news: "It means if the customer insists on a b/g network, the [devices] that are currently installed do not work properly together and only allow about 40% connectivity. We are unable to meet the customer's expectations with the current equipment."

In these two sentences, Neal is not recounting her conversation with counsel. She is instead explaining to her colleagues the real-world impact of the advice – an impact that she learned about from the engineering group, not counsel. *See Neal Deposition* at pp. 239-40.

In other words, Neal is not answering the question that looks backward and asks, "What did I discuss with counsel?" Instead, she is answering the question that looks forward and asks, "What is the real-world business consequence of the legal advice?" The answer to that latter question is not privileged under *Upjohn*

**Memorandum Decision and Order – Page 6**

and Idaho Rule of Evidence 502.[2]

The same analysis applies to the other un-redacted sentences. Hence, the Court finds that they are not privileged. The decision of the Chief Magistrate Judge on this issue is therefore affirmed.

## 2. E-Mail is Admissible for Impeachment Purposes

Sprint also appealed from that portion of the decision holding that "in light of the overriding issue of fairness, it is possible, depending on the circumstances at trial, that even the privileged portions may possibly be used to impeach any contradictory or inconsistent testimony." *See Decision* at p. 15. The Court understands the fairness concerns that prompted this decision. However, the potential for this unfairness to actually arise seems remote. The only way it could occur would be if Neal waived the privilege at trial and testified to the legal advice she received in a manner contrary to the redacted portions of the e-mail. That seems unlikely. Moreover, the parties have not cited any authority supporting an impeachment exception. For these reasons, the Court finds that the redacted

---

[2] TSN does not argue that Neal waived any privilege by sending the e-mail to her three co-workers. There may be a waiver if Neal revealed privileged matters to persons beyond those with a "need to know of the communication in order to act for the organization." *See Restatement (Third), supra,* at § 73(4)(b), comment g. Perhaps because this issue was not raised in the briefing, the Court was not been directed to any part of the record that might detail the duties of the recipients of the Neal e-mail. Accordingly, the Court makes no findings on this issue.

**Memorandum Decision and Order – Page 7**

portions of the e-mail that were deemed privileged may not be used at trial for impeachment purposes.

## 3. Sprint Corporation's Motion to Strike Jury Demand or Compel Arbitration

TSN has sued Sprint Corporation for tortiously interfering with its contract with Sprint Communications. Sprint Corporation seeks to enforce the CSA's jury waiver provision despite not having been a signatory to the agreement.

As the Chief Magistrate Judge noted, a jury waiver is a contractual right "and generally may not be invoked by one who is not a party to the contract." *Paracor Fin. Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996). In response, Sprint Corporation cites cases allowing non-signatories to enforce arbitration clauses. The Magistrate Judge aptly pointed out that "[u]nlike arbitration clauses, courts generally construe jury waivers narrowly." *Id*. at p. 1166, n. 21. The cases cited by Sprint Corporation, including *Comer v. Micor*, 436 F.3d 1098 (9th Cir. 2006), simply have no application here.

Sprint Corporation argues in the alternative that if the jury waiver clause is unenforceable, TSN must arbitrate its dispute with Sprint Corporation because the CSA states that if the waiver clause is unenforceable, the parties must proceed to arbitration. Once again, that provision applies only to parties to the contract, not to

**Memorandum Decision and Order – Page 8**

Sprint Corporation.  The Court finds that the Chief Magistrate Judge shall therefore be affirmed on this issue.

**4.      Motion To Stay**

Sprint seeks to stay the taking of Neal's deposition until this appeal is decided.  That motion is now moot.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Objections filed by Sprint Communications (Docket No. 125) are GRANTED IN PART AND DENIED IN PART.  They are granted to the extent that they seek a ruling that the redacted portions of the Neal e-mail that were deemed privileged may not be used for impeachment purposes at trial, and are denied in all other respects.

IT IS FURTHER ORDERED, that the motion to stay and for protective order (Docket No. 140) is DEEMED MOOT.

DATED: **January 8, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 9**