IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRUCKSTOP.NET, L.L.C., ) | |
| ) | Case No. CV-04-561-S-BLW |
| Plaintiff, ) | (Lead Case) |
| ) | Consolidated with |
| ) | Case No. CV-05-138-S-BLW |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| SPRING COMMUNICATIONS ) | **AND ORDER** |
| COMPANY, L.P., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

# INTRODUCTION

The Court has before it motion to amend filed by Sprint and a stipulation filed by all parties to amend the Scheduling Order. The motion is fully briefed and at issue. For the reasons expressed below, the Court will deny the motion as to the veil-piercing amendments but grant it as to the foreclosure amendment. In addition, the Court will approve the Stipulation.

# ANALYSIS

TSN provides wireless internet access to its subscribers through access points at truck stops across the United States. The subscribers are typically truck drivers who own portable laptops and pay TSN a monthly fee.

**Memorandum Decision and Order - 1**

In 2003, TSN entered into a Customer Service Agreement (CSA) with Sprint Communications.  Pursuant to that contract, TSN was to pay Sprint to set up wireless networks at truck stops that would enable TSN subscribers to access the internet.

TSN alleges that after Sprint installed its system, TSN subscribers complained that they could not connect to the Internet, and many subscribers consequently cancelled their TSN subscriptions.[1]  TSN filed this suit on November 15, 2004 to recoup its losses.

Sprint denies that its networks are deficient, and filed a counterclaim alleging that TSN owes it over $3 million for installing the networks.  Sprint's counterclaim further alleges that TSN has been unjustly enriched by retaining those networks without paying for them.

The Court required that any motions to amend or join parties be filed on or before April 12, 2005.  The Court's Order noted that this date preceded the discovery deadline of September 12, 2005, and so directed the parties "to send out all discovery requests that might relate to amendment or joinder enough in advance of this amendment and joinder deadline to obtain the response needed to make an

---

[1] TSN later filed a second suit against the Sprint Corporation, the parent company to Sprint Communications, alleging that it interfered with TSN's contract with Sprint Communications.  The two actions were consolidated.

**Memorandum Decision and Order - 2**

informed decision on amendment and joinder." *See Case Management Order filed January 20, 2005* (docket no. 35).

1.     **Proposed Veil-Piercing Amendments**

On June 2, 2006, more than a year after this deadline had expired, Sprint filed a motion to amend its counterclaim to add claims against the following entities and individuals:  (1) Loeb Investors Co, 153, L.P., and its general partners Loeb Holding Corporation and Bruce Lev; (2) Truckstop Guaranty Partners, L.P. and its general partners Loeb Holding Corporation and Bruce Lev; (3) Bruce Lev; and (4) Thomas and Mary Holmes.  These entities will be collectively referred to as the East Coast Investors or the ECIs.

Sprint's proposed amendments allege that the ECIs controlled TSN, hid from Sprint crucial facts showing TSN's undercapitalization, and refused to fund TSN at a critical juncture ensuring that it could never pay Sprint for the networks. Based on this alleged conduct of the ECIs, Sprint seeks to disregard the limited liability protection provided by the LLC structure of TSN, and hold the ECIs jointly and severally liable for any award Sprint obtains on its counterclaim against TSN.

TSN responds that the motion is late and futile.  To meet the timeliness objection, Sprint must show "good cause" under Rule 16(b), a standard that

**Memorandum Decision and Order - 3**

"primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). To prevail on its futility argument, TSN must show that the proposed amendment "would fail as a matter of law on a motion for summary judgment." *Yakima Indian Nation v. State of Wash. Dept. of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999).

To resolve these issues, the Court must first review some background. TSN is a limited liability company (LLC). An Amended LLC Agreement, dated December 9, 2003, lists the ECIs as "members" and protects them from any of TSN's liabilities. *See Agreement at § 6.6(a)*. The parties agree that this Agreement is governed by Delaware law.

Delaware law provides generally that LLC members – such as the ECIs – are not liable for the obligations of the LLC. *See Del. Code* at Title 6, § 18-303(a). Thus, Sprint relies on veil-piercing doctrines that disregard the limited liability protections afforded by the LLC structure of TSN.

While Sprint does not identify any Delaware decision that expressly applies to LLCs the veil-piercing doctrines that have traditionally been applied to corporations, Sprint does cite to one commentator who expects Delaware to go in that direction. *See* Bendremer, *Delaware LLCs and Veil Piercing: Limited Liability Has Its Limitations*, 10 Fordham J. Corp. & Fin. L. 385, 404-05 (2005)

**Memorandum Decision and Order - 4**

(concluding that "it is likely that Delaware courts would apply corporate veil piercing or some variation to LLCs"). The Court agrees and will so assume.

Sprint's proposed amendments contain two alternative veil-piercing arguments. First, Sprint alleges that the ECIs "hid the inadequate capitalization and insolvency of TSN from Sprint," refused to fund TSN or authorize actions beneficial to it, and ultimately "chose to put TSN out of business." *See Proposed Amended Counterclaim* at ¶ 15, p. 11, ¶ 19, p. 12.

Sprint's alternative veil-piercing argument relies on certain deposition testimony given in the spring of 2006 by ECIs Bruce Lev and Thomas Holmes. In response to claims by Sprint that TSN had been insolvent, Lev and Holmes testified that they stood ready to invest $50 million in TSN if Sprint had been able to fix its network problems.

Sprint alleges in its proposed amendments that this testimony is inconsistent with the evidence discussed above that the ECIs were putting TSN out of business. Nevertheless, Sprint argues that if the testimony is to be believed, it provides an alternative ground for piercing the veil of the LLC structure of TSN: The ECIs' willingness to invest a sizeable sum, when not obligated to do so by the LLC Agreement, shows that they "wished to treat their own net worth as synonymous with that of TSN," and therefore "renounced the separateness of TSN and, instead,

**Memorandum Decision and Order - 5**

asserted TSN to be [their] alter ego." *See Sprint Reply Brief* at pp. 8, 11.

Sprint's proposed amendments thus contain two alternative veil-piercing arguments: (1) The ECIs drove TSN into insolvency; or (2) The ECIs were willing to merge their personal assets with TSN's assets to ensure TSN's solvency. Either way, Sprint asserts, the ECIs disregarded the separate nature of the TSN LLC and should be held personally liable.

The Court turns first to the proposed amendments alleging that the ECIs drove TSN to insolvency. While Sprint alleges that it did not learn of certain facts until the spring 2006 depositions of Lev and Holmes, Sprint points to nothing in those depositions that supports Sprint's allegations in the proposed amendments that (1) TSN was insolvent, (2) that the ECIs controlled TSN; (3) that the ECIs hid TSN's insolvency from Sprint, (4) that the ECIs refused to authorize actions beneficial to TSN, and (5) that the ECIs were putting TSN out of business. *See Proposed Amended Counterclaim* at ¶¶ 14-21, 26.

In fact, the record reveals that Sprint knew of this information long before the spring of 2006. For example, Sprint had TSN's financials in late October of 2004, and from those numbers Sprint concludes "[c]learly, TSN was insolvent." *See Sprint Reply Brief* at pp. 3-4. At the same time, Sprint knew that the ECIs were refusing to bail TSN out. Sprint's Regional Sales Director, Deborah Neal,

**Memorandum Decision and Order - 6**

testified that in October of 2004, TSN investors, including Lev, told her that although they had the money, they refused to invest it in TSN because the network was not installed properly.  *See Neal Deposition* at pp. 123-24.  In August of 2005, Sprint learned during the deposition of Scott Moscrip (TSN's President) that the ECIs controlled TSN's finances.  *See Moscrip Deposition* at pp. 65, 224.  Finally, TSN produced e-mails and other evidence relied on by Sprint in making these allegations as early as May of 2005.  For example, Sprint relies on an e-mail from Holmes stating that the ECIs were not willing to "keep spending into the sunset," and expressing an unwillingness to use a $5 million line of credit, as evidence that the ECIs were not willing to keep TSN alive.  *See, e.g. Exhibit 8 to Thomas Affidavit*.  That e-mail was produced to Sprint by TSN on May 27, 2005, more than a year before Sprint's motion to amend was filed.  *See Exhibit C to Declaration of Getzoff*.

      This information was all in Sprint's hands before the spring 2006 depositions of Lev and Holmes.  Accordingly, there has been no showing of good cause with regard to paragraphs 14 through 21, and 26, in the proposed Amended Counterclaim.

      This leaves Sprint's proposed amendments that do relate to the spring 2006 depositions.  These amendments are limited to the "revelations" of Lev and

**Memorandum Decision and Order - 7**

Holmes that because they stood ready to invest $50 million if the networks were installed properly, TSN was not insolvent.  *See Proposed Amended Complaint* at ¶¶ 23, 25.

Even if these particular amendments can surmount the timeliness hurdle, they must also clear the futility hurdle.  TSN argues that the proposed amendment is futile because no case pierces an LLC's veil simply because an investor expresses a willingness to make a non-obligatory investment to the LLC.  Sprint responds that it is fundamentally unfair for the ECIs to use the LLC to shield their assets but then use those assets as a sword to argue that TSN was not insolvent.

Evidence of co-mingling of assets could support veil-piercing.  *See* Bendremer, *supra* at p. 405 (concluding that "co-mingling of assets . . . and the like could all serve as the basis for veil piercing").  However, Sprint points to no such evidence.  At most, Lev and Holmes stood ready to make the $50 million investment, but never did so.

If their proposed investment could be accomplished *only* by a co-mingling that disregarded the separate nature of the LLC, Sprint may have a stronger position.  But no evidence supports such speculation.  Indeed, the TSN LLC Agreement contemplates non-obligatory loans or capital contributions under certain conditions, signaling that an investor could make a non-obligatory

**Memorandum Decision and Order - 8**

investment without disregarding the separate structure of the LLC. *See TSN LLC Agreement* at § 3.5 (stating the conditions under which a member may make a non-obligatory loan or Capital Contribution to the LLC).

Thus, the proposed amendments based on the 2006 deposition testimony – that TSN was not insolvent because the ECIs stood ready to invest $50 million – cannot form the basis for veil-piercing and hence are futile.

**2.      Proposed Foreclosure Amendments**

Sprint also seeks to add a claim seeking recovery of about $150,000 from TSN's sale of certain equipment installed by Sprint. The record shows Sprint was aware of TSN's sale in July of 2005, and objected to TSN's claim to the proceeds. *See Exhibit M to Getzoff Declaration*. In response to Sprint's urging to pay the proceeds into the Court's registry for later resolution by the Court, TSN notified Sprint that it was placing the contested funds in a "escrow" account.

The Court reads this exchange between counsel as an acknowledgment by both sides that the Court would have to resolve the issue. Under these circumstances, justice is not served by rejecting Sprint's attempt to add this amendment. The matter will be quickly disposed of, and involves simply the interpretation of a written security agreement. The Court will grant this part of Sprint motion.

**Memorandum Decision and Order - 9**

### 3. **Stipulation**

The parties have submitted a Stipulation that extends deadlines, including an extension of the dispositive motion deadline by 134 days. This Stipulation will resolve disputes over experts without Court intervention, and also takes into account the delay in resolving other motions. The Court will approve it.

### 4. **Conclusion**

The Court finds that the proposed veil-piercing amendments are barred by untimeliness and futility while the proposed foreclosure amendment will be permitted. The Stipulation shall be approved.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to amend (Docket No. 110) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to amend Sprint's counterclaim to add a claim for foreclosure. It is denied in all other respects. Sprint is directed to draft a new counterclaim, deleting those proposed amendments not allowed, for submission to the Clerk of the Court for filing.

IT IS FURTHER ORDERED, that the Stipulation (Docket No. 139) is

**Memorandum Decision and Order - 10**

APPROVED.



DATED: **January 12, 2007**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 11**